IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

LYNETTE F. ORTEZ,

       Plaintiff,                  No. CIV S-06-1748 CMK

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.           ORDER

_____/

        Plaintiff, Lynette Ortez, brings this action for judicial review of a final decision of

the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) and Local Rule 72-302.  The

parties have filed cross motions for summary judgment.  As both parties have consented to

magistrate jurisdiction, the motions are before the undersigned for decision.  For the reasons

discussed below, the court vacates the Commissioner's decision and remands this matter for

further administrative proceedings.

**PROCEDURAL BACKGROUND**

        Plaintiff applied for Supplemental Security Income (SSI) benefits with a protective

filing date of October 29, 2002.  (Tr. 81, 82-84.)  Her claim was denied initially and upon

reconsideration. (Tr. 44-45, 46-50, 53-57.)  A hearing was held before Administrative Law Judge

(ALJ) Antonio Acevedo-Torres on July 6, 2004.  (Tr. 490-509.)  Plaintiff testified at the hearing.

(Id.)  On July 22, 2004, the ALJ issued a decision finding that plaintiff was capable of performing

1

work in the national economy and denying her benefits application.  (Tr. 42-43.)  Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  (Tr. 62-64.)  The Appeals Council vacated the ALJ's decision and remanded the matter for a new hearing with specific instructions.  (Tr. 62-64.)

A supplemental hearing was held on September 15, 2005 before ALJ Mark Ramsey.  (Tr. 26-29, 511-560.)  Plaintiff testified at the hearing, and her sister, Lacey Ortez, (Lacey) testified as well. (Tr. 511.)  As directed by the Appeals Council, both a qualified medical expert (ME) and a qualified vocational expert (VE) were present and provided testimony at the hearing.  (Tr. 547-558.)   On March 7, 2006, the ALJ issued a decision finding that plaintiff was not disabled and, thus, not entitled to benefits.  (Tr. 23-24.)   The Appeals Council denied her request for review on July 20, 2006, making the decision the final decision of the Commissioner. Plaintiff then filed a timely action for judicial review in this court.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the

///

///

2

Commissioner's decision. See Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. At steps one through four, the burden of proof is on the claimant. Tackett v. Apfel, 180 F.3d 1094, 1098-1099 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id. Below is a summary of the five steps, which also are described in Tackett:

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 416.920(b). In this case, the ALJ found that the plaintiff was not engaged in substantial gainful activity. This finding is not challenged.

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step two, the ALJ found that plaintiff had the following severe impairments: severe degenerative lumbar disc disease, asthma, dysphoria, anti-social behavior, and history of substance abuse. Plaintiff does not dispute this finding of severe impairments.

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment. This finding is in dispute;

3

specifically, plaintiff asserts that the ALJ erred in finding her testimony and the testimony of her sister Lacey Ortez not fully credible.

Step Four.  The Commissioner determines whether claimant is able to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  In this case, the ALJ determined that plaintiff had no relevant work experience.  This finding is not in dispute.

Step Five.  The Commissioner determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the Commissioner does not meet this burden, claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).  Here, the ALJ found  that plaintiff is capable of performing a significant number of jobs in the national economy.  This finding is challenged.

## FACTUAL BACKGROUND

Plaintiff was 46 years old at the time of the September 2005 supplemental hearing. (Tr. 514.)  Plaintiff dropped out of high school half-way through the 10th grade. (Id.)  She tried to do Job Corp, but could not complete it, and she was not successful in her attempts to earn her GED. (Tr. 528.)  Her employment history consisted of working in a nursing-home-type setting from June 1998 to June 1999. (Id.)

Plaintiff testified that she  lived with her sister and sister's family. (Tr. 516.)  She would be homeless if her sister had not taken her in. (Tr. 530.)  Plaintiff stated that she changed her sheets, did her own laundry and cooked approximately twice a week. (Tr. 517-18.)  She went to the grocery store about once a month, but she only went with her sister or her niece. (Tr. 518.)  Plaintiff stated that she did not drive because she felt claustrophobic in cars. (Id.)  She testified

4

that she walked to get around, but she can only walk 15 minutes a day, and with her sister.  (Tr. 518-19.)  Plaintiff stated she  liked to be outside, and had no friends other than her family.  (Tr. 521.)  She testified that she visited homeless camps  to"see if they needed any help." (Tr. 522.)  She later testified that she "hangs out at homeless camps," she "doesn't see [homeless people] as dangerous. [she] sees them as some of the nicest people that she knows." (Tr. 535.)   Plaintiff testified that homeless people "accepted her more than anybody else." (Id.)  She does not "get all freaked out and stuff like that..." when she is socializing at the homeless camps.  (Id.)

Plaintiff testified that when she is in a work situation with a lot of people she has anxiety attacks or she just "takes off." (Tr. 537.)  She also admitted being in jail twice; once for petty theft from a grocery store and once for welfare fraud.  (Tr. 530.)

Plaintiff's sister Lacey testified that plaintiff lived with her and that plaintiff was like her child. (Tr. 539.)  Lacey reminded plaintiff to take her medications and had to supervise plaintiff's personal hygiene.  (Tr. 540.)  Lacey stated that plaintiff exhibited poor judgment.  Lacey recounted an incident where she had to take plaintiff out of a creek as an example of the poor judgment. (Tr. 540.)  Plaintiff was menstruating,  and she had apparently gone into a creek near a homeless camp to bathe herself.  (Tr. 541.)  When she found plaintiff, Lacey took plaintiff home and cleaned her up.  Lacey testified that the grocery store theft and the welfare fraud were also examples of bad judgment on plaintiff's part. (Tr. 543-44.)  Lacey testified that plaintiff used to drink to drown out the voices in her head until plaintiff got the right medicine cocktail.  (Tr. 543.)

The medical records in this case accurately set forth plaintiff's medical history as it relates to her claim for benefits.  The court has carefully reviewed the extensive medical records.  Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) improperly determining that plaintiff retained the residual functional capacity (RFC) to perform work in the national economy; (2) misstating the testimony of the ME and ignoring and discounting, without justification, the

testimony of the VE and; (3) failing to properly credit both plaintiff's testimony and her sister Lacey's testimony.

I.  Credibility Determination

    The court will discuss plaintiff's last claim of error first.   The ALJ is responsible for making credibility determinations.  See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).   However, the ALJ cannot reject a plaintiff's testimony without giving clear and convincing reasons for doing so.  See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998).  The ALJ must specifically identify the testimony he finds not to be credible and explain what evidence undermines the testimony.  See id.  The evidence upon which the ALJ relies to undermine the testimony must be substantial.  See id.  Plaintiff contends that the ALJ's credibility finding regarding her testimony and her sister Lacey's testimony is not supported by the evidence cited. The court agrees..

    The ALJ found that plaintiff's testimony regarding her inability to stand, walk, lift over fifteen pounds, or otherwise perform any activity for more than about 10 to 15 minutes is "simply not shown to be a reasonable consequence of her medically determinable impairments." (Tr. 21.)   The evidence that the ALJ relied on to discount the testimony of plaintiff's physical limitations was the minimal findings reported by the examining consultant and plaintiff's denial of any discomfort during this examination.  However, there is substantial evidence in the record which demonstrates that plaintiff suffered from severe back pain and ankle pain.  For example, the medical records show plaintiff had chronic right ankle pain and back pain and took 800 milligrams of ibuprofen often for pain. (Tr. 213, 198, 208, 252.)   Because the ALJ's credibility finding is not supported by substantial evidence, the court concludes that the ALJ's credibility determination regarding plaintiff's testimony about her physical limitations was erroneous.

    The ALJ found that plaintiff's and her sister's testimony regarding plaintiff's mental limitations was not  credible "in light of plaintiff's testimony that she changes her sheets, does some cooking, occasionally attends church and previously "went to the homeless shelter to help out." (Tr. 21.) He also found that plaintiff's credibility regarding her testimony was further diminished by her history of theft and fraud because of the obvious limitations that those crimes

had on her moral behavior.  (Tr. 21.)    As an initial matter, the court finds that the ALJ misunderstood plaintiff's testimony.  It is clear from a review of the September 2005 hearing transcript that plaintiff did not go to the homeless camps to "help out."  Instead, she went to the homeless shelter, despite the dangers presented there, because it was the only place that she felt accepted.  She went there to socialize.  The testimony of Lacey concerning plaintiff's efforts to bathe in a creek near a homeless camp is further evidence of a serious mental limitation.  The evidence in the record of plaintiff's theft and welfare fraud is also evidence supporting her poor judgment and mental limitations, and not, as the ALJ concludes, evidence that plaintiff is not credible in her testimony about her mental capabilities.  The ALJ's credibility finding regarding the testimony about plaintiff's mental limitations is belied by the substantial medical records of plaintiff's mental health treatment.  (Tr. 377, 379-387.)  In short, the court finds that the ALJ did not rely on substantial evidence when he discounted the testimony of plaintiff and her sister Lacey concerning plaintiff's mental health limitations.

The ALJ erred by failing to properly credit the testimony of plaintiff regarding her physical limitations and the testimony of plaintiff and her sister regarding plaintiff's mental limitations.

II.  Improper Reliance On The Grids

Plaintiff argues that the ALJ erred by relying on the Grids to determine that plaintiff could perform other work at Step Five.   The remand from the Appeals Council specifically discouraged the use of the Medical Vocational Guidelines, known as the grids, in favor of the use  of the testimony of a VE.  (Tr. 62-64.)  An ALJ may rely on the grids in lieu of testimony of a VE only when the grids accurately and completely describe a plaintiff's limitations and abilities.  See  Heckler v. Campbell, 461 U.S. 458, 462 n. 5 (1983).  A VE testified at plaintiff's supplemental hearing; however, when making his RFC determination, the ALJ relied on both the testimony of the VE and on the grids.  In light of the remand instructions and case law which dictates that the grids should not be used when a claimant has non-exertional limitations, such as mental problems, the court finds that the ALJ erred by using the grids as a framework. On remand the ALJ is  directed to refrain from using the grids to determine if plaintiff can perform

work in the national economy.  Instead, the ALJ shall rely solely on the testimony of a VE.

III.  Failure To Properly Consider The Recommendations Of The ME And VE

        Plaintiff's final claim of error is that the ALJ failed to properly consider the testimony of the ME and the VE.   The court finds that in this case, the argument regarding consideration of the VE's recommendations is moot.  The ALJ failed to properly credit plaintiff's testimony and her sister's testimony. In light of this failing, any hypothetical put to the VE may not have accurately identified plaintiff's limitations.

        Plaintiff's claim concerning the failure of the ALJ to properly follow the recommendation of the ME appears to argue that the ALJ failed to properly credit the medical opinion of plaintiff's treating and examining physicians.  Specifically, plaintiff argues that "the ALJ committed reversible error by noting and then without justification ignoring Dr. Ignatowicz's reporting in Exh. #17 and discounting the last report of SSA consultant Dr. Cheema, Exh. # 18." (Doc. 17 at 18: 20-23.) A reading of plaintiffs' reply brief indicates that she may be arguing that the ME's opinion was consistent with that of plaintiff's treating and examining physicians, but the ALJ ignored this in his decision.  It is not clear, however, on what plaintiff bases her argument that the ALJ did not properly consider the ME's opinion, and the court declines to research and develop this argument for her.

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

The record fails to support the administrative law judge's finding that plaintiff's and Lacey's testimony regarding her physical and mental limitations was not credible.  The ALJ also erred in relying on the grids in light of plaintiff's significant non-exertional limitations.

Accordingly, IT IS ORDERED that:

1.  The cross motions for summary judgment are denied and

2.  This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.


DATED:   July 13, 2007.


                                            CRAIG M. KELLISON
                                            UNITED STATES MAGISTRATE JUDGE